UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| PERSHING MERO, JR. | CIVIL ACTION NO. 18-260 |
| VERSUS | JUDGE ELIZABETH E. FOOTE |
| NATIONAL RAILROAD ADJUSTMENT BOARD, ET AL. | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Now before the Court is a Motion for Summary Judgment [Record Document 78] filed by Defendant Kansas City Southern Railway Co. ("KCSR") pursuant to Federal Rule of Civil Procedure 56. Pro se Plaintiff Pershing Mero ("Mero") has filed an opposition [Record Document 81]. Defendant has filed a reply. [Record Document 82]. For the reasons discussed below, the motion for summary judgment [Record Document 78] is hereby **GRANTED**. Mero's claims against KCSR are hereby **DISMISSED WITH PREJUDICE**.

**BACKGROUND**

Mero worked for KCSR for sixteen years before he was terminated. Record Document 56, p. 1. At the time he was discharged from the company, he was an engineer. *Id.* at 7. Mero was fired because a train he was operating collided with a stopped, empty train located on the railroad tracks. *Id.* at 2. Mero's union, the Brotherhood of Locomotive Engineers and Trainman ("BLET"), pursued a formal investigation on his behalf. *Id.* At the conclusion of the investigation, Mero was dismissed from KCSR effective immediately. *Id.* at 3. That decision was appealed to the KCSR Labor Relations Department, which upheld his dismissal. *Id.* The decision was further pursued to Public Law Board 6884 ("the Board"), which is a three-person arbitration board designed to resolve

1

disputes arising between the railway company and its employees. *Id.* The Board upheld Mero's dismissal based both on his conduct on the day of the accident as well as his discipline history. *Id.*

Mero filed the instant suit in federal court against the Board, KCSR, and BLET, seeking review of his dismissal. He asserts federal jurisdiction is based upon the Administrative Procedure Act and the Railway Labor Act, codified at 45 U.S.C. § 153. *Id.* at 4–6. In a previous ruling, the Court granted motions to dismiss by BLET and the Board. Record Document 75. The Court found that the Public Law Board was entitled to sovereign immunity. *Id.* at 7. The Court also found that "damage against and relief from BLET simply is not permitted by the Railway Labor Act." *Id.* at 9. Mero's claims against BLET and the Board were dismissed without prejudice. *Id.* at 10. Thus, KCSR is the only defendant remaining in this suit.

Mero asserts that during the formal investigation, KCSR did not adhere to the Collective Bargaining Agreement ("CBA") by not allowing him witnesses. Record Document 56, p. 2. He states that KCSR did not inform him of his dismissal until August 12, 2015, nine days after the investigation, in violation of the CBA's time limits. *Id.* at 3. Mero accuses KCSR of failing to adhere to the proper time limits in denying the appeal of his dismissal. *Id.* Mero faults BLET and KCSR for the Board's receipt of an incorrect discipline record. *Id.* Mero contends the Board "exceeded [its] jurisdiction in failing to interpret the [collective bargaining agreement] and Federal Railroad Administration . . . rules." *Id.* He also "sees Fraud and Corruption with KCSR and the Board in their dealings with Plaintiff disciple [sic] report." *Id.*

Mero asks this Court to do a myriad of things, including: (1) set aside Public Law Board 6884's findings; (2) award back pay with commensurate seniority and vacation benefits; (3) reinstate him as an engineer for KCSR; (4) remove the crash from his record; (5) award $350,000 in damages (property loss, pain, suffering, and loss of enjoyment of life), payable by BLET; and

(6) award $350,000 in damages (for pain and suffering and loss of enjoyment of life) against KCSR. *Id.* at 7.

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) directs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. *See id.* at 322–23.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact, the nonmovant must demonstrate that there is, in fact, a genuine issue for trial by going "beyond the pleadings and designat[ing] specific facts" for support. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). "This burden is not satisfied with some metaphysical doubt as to the material facts," by conclusory or unsubstantiated allegations, or by a mere "scintilla of evidence." *Id.* (internal quotation marks and citations omitted). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1985) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so "weak or tenuous" that it could not support a judgment in the nonmovant's favor. *Armstrong v. City of Dall.*, 997 F.2d 62, 67 (5th Cir. 1993).

Additionally, Local Rule 56.1 requires the movant to file a statement of material facts as to which it "contends there is no genuine issue to be tried." The opposing party must then set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." W.D. La. R. 56.2. All material facts set forth in the movant's statement "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." *Id.*

## LAW AND ANALYSIS

### I. Applicable Law

The Railway Labor Act provides:

> The court shall have jurisdiction to affirm the order of the division, or to set it aside, in whole or in part, or it may remand the proceedings to the division for such further action as it may direct. On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.

45 U.S.C. § 153 First (q).

This is a highly deferential standard of review. As such, the Court may set aside an arbitration panel's findings under only three circumstances: the panel violated the Railway Labor Act, the panel issued a decision outside the scope of its jurisdiction, or the panel (or a member thereof) committed fraud. *Id.* The Court has no jurisdiction over any other challenges to the panel's award. *Id.* Therefore, the Court cannot overturn the panel's decision in a matter simply because it may disagree with the conclusion. The Fifth Circuit Court of Appeals reinforced this point in *Diamond v. Terminal Railway Alabama State Docks*, 421 F.2d 228 (5th Cir. 1970). There, it explained that

> [t]he federal courts do not sit as super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence

4

>supports the Board's awards. Under the Railway Labor Act, . . . the range of judicial review in enforcement cases is among the narrowest known to the law. Board awards are 'final and binding' upon the parties. In court the findings and order of the Board are 'conclusive.'

*Diamond*, 421 F.2d at 233.

Mero has previously acknowledged that a district court's review of a National Railroad Adjustment Board decision—and by extension, a Public Law Board decision—is one of the "narrowest known to law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978); *see* Record Document 63, p. 2 ("Plaintiff is confident that this case fits the narrowest known to the law."). The Court will now examine whether Mero has raised a genuine issue of material fact as to whether any of the three reviewable circumstances are present in this case.

### A.     Fraud

Mero states that he "sees Fraud and Corruption with KCSR and the Board in their dealings with Plaintiff disciple [sic] report." Record Document 56, p. 3. This statement appears to be connected to Mero's allegation that KCSR submitted an erroneous discipline record to the Board in preparation for the hearing and that KCSR violated its own discipline policy by not adhering to the three-year look back period by leaving things on his discipline record that were older than three years. *Id.* at 3–4. As to the allegations of fraud against KCSR, § 153(q) states that the Court can set aside an arbitration panel's findings and order "for fraud or corruption by a member of the division making the order." 45 U.S.C. § 145(q). Unfortunately for Mero, the Board is no longer a party to this case and an allegation of fraud against KCSR, a party to the arbitration, does not satisfy this requirement. *See Farris v. Union Pacific R.R. Co.*, 396 F. App'x 125, 128 (5th Cir. 2010) (per curiam) ("As the plain statutory text suggests, the appellants were obligated to provide evidence of corruption on the part of the arbitrator, not on the part of parties to the arbitration.")

As to the allegations that the Board engaged in fraud, Mero does not detail how KCSR submitting an erroneous discipline record to the Board or failing to adhere to a three-year look back constitutes fraud or corruption on the part of the Board. Moreover, Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[A]rticulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177–78 (5th Cir. 1997) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)). Plaintiff's vague and conclusory assertion that he "sees fraud and corruption" with the Board are not adequate grounds upon which the Court can set aside the Board's findings.

### B. The Board's Jurisdiction

Mero asserts that the Board exceeded its jurisdiction by failing to interpret the CBA and the Federal Railroad Administration rules. Record Document 56, p. 3. The Fifth Circuit has previously held that an arbitration panel exceeds the scope of its jurisdiction if it ignores an explicit term in a CBA. *See Cont'l Airlines, Inc. v. Int'l Bhd. of Teamsters*, 391 F.3d 613, 620 (5th Cir. 2004) (noting that an interpretation which reads out a phrase from an agreement cannot be an arguable construction of the agreement). "But as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). The Fifth Circuit has stated that

> [i]n the arbitration context, an award 'without foundation in reason or fact' is equated with an award that exceeds the authority or jurisdiction on the arbitrating body. To merit judicial enforcement, an award must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the

6

> collective bargaining agreement. The arbitrator's role is to carry out the aims of the agreement, and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction.

*Diamond*, 421 F.2d at 233 (citing *Bhd. of R.R. Trainmen v. Cent. of Ga. Ry. Co.*, 415 F.2d 403, 411–12 (5th Cir. 1969)). Simply, this Court must uphold the "Board's award unless that award is without foundation in reason or fact." *Id.* (internal quotation marks omitted). Further, the "test of the Board's jurisdiction is not whether the reviewing court agrees with the Board's interpretation of the bargaining contract, but whether the remedy fashioned by the Board is rationally explainable as a logical means of furthering the aims of that contract." *Id.* (citing *Bhd. of R.R. Trainmen*, 415 F.2 at 412).

Based on the evidence in the record, Mero has failed demonstrate that the Board exceeded its jurisdiction. He does not identify the specific rules he contends the Board failed to interpret. Based on Mero's other references to the CBA, the Court makes an educated guess that he is attempting to argue that the Board exceeded its jurisdiction when it failed to penalize KCSR for failing to comply with the CBA's requirements regarding the presentation of witnesses and time limits for informing Plaintiff of his termination. *Id.* at 1–2. Mero reiterates in his opposition that the CBA "is clear and unambiguous" that he had a right to present witnesses during the formal investigation. Record Document 81, p. 4. In response, KCSR points to the Board's finding that there was "substantial evidence to support the charges against Mr. Mero" and that KCSR's alleged procedural errors were not "fatal to the case." Record Document 78-1, p. 20 (citing Record Document 51-7, p. 1).

The Court finds Plaintiff's arguments to have no merit. Mero has produced no evidence or argument that shows how the Board exceeded its jurisdiction by interpreting these alleged violations as procedural errors and not dispositive to the outcome. Regarding the Board failing to penalize

7

KCSR for not allowing him to present witnesses, the Court finds that Plaintiff is actually complaining that KCSR denied two witnesses that he sought to call: the dispatcher and corridor manager. Record Document 51-4, pp. 83–84. However, the CBA only requires "necessary witnesses."[1] It was reasonable for KCSR and the Board to conclude that the dispatcher and corridor manager were not necessary witnesses because Mero was operating under centralized traffic control where the signals along the rails are determinative of the engineer's actions, not direction from the dispatcher or corridor manager. Record Document 51-4, pp. 15, 85–86. Mero has put forth no evidence to controvert the Board's conclusion that this alleged error was non-fatal to the case or otherwise show how this was an irrational interpretation of the CBA. *See Diamond*, 421 F.2d at 233. Therefore, the Board's determination in this respect will not be disturbed.

In addressing Mero's timeliness argument, the CBA requires that "a decision shall be rendered in [a] case within five (5) days from date of investigation." Record Document 51-5, p. 67. Mero avers that the investigation was held on August 3, 2015, but a decision was not rendered until August 12, 2015. Record Document, 56 p. 6. It is within the Board's jurisdiction to consider the CBA's timing provisions and determine if any violation warrants reversal. *See Gocha v. Nat'l R.R. Passenger Corp.*, 75 F. Supp. 3d 1304 (D. Colo. 2014) (finding timeliness falls within jurisdiction of arbitration board). In fact, the Board considered this argument to be an alleged procedural error

---

[1] Article 48(a) on discipline in the CBA states that

> "[e]ngineers shall not be discharged, suspended or demerits placed against their records except for good and sufficient cause. If an engineer is suspended pending an investigation, the investigation will be held within seven (7) days from the time relieved from duty, provided all principals and necessary witnesses can be made available on a particular day within that period, he will be given not less than three (3) days written notice of such investigation and a decision shall be rendered in the case within five (5) days from date of investigation. Engineers will be notified of any disciplinary records made against them.

*See* Record Document 51-5, p. 67.

8

and not fatal to the decision to dismiss Mero. Record Document 51-7. Plaintiff has failed to show how this interpretation of the CBA is "without foundation in reason or fact" or not rationally explainable. Therefore, the Court will not disturb the Board's determination in this regard.

The Board's decision to uphold Mero's dismissal was a rational conclusion based on the magnitude of the accident.[2] Mero admitted that he violated KCSR's General Code of Operating Rule ("GCOR") 6.27—Movement at Restricted Speed—when he was unable to stop the train before it collided with the rear of another train. When asked if he complied with the rule, Mero stated, "No, I did not." Record Document 51-4, p. 75. This rule is violated when an engineer's train exceeds 20 miles per hour in a restricted speed area and the engineer is unable to stop the train within half the range of his vision short of any obstruction. Record Document 51-3, p. 6. Failing to comply with this rule is a dismissal infraction by itself when causing a reportable accident, pursuant to 49 C.F.R. § 240.117(e)(2).[3] Record Document 82, pp. 8–9 (citing Record Documents 51-3, p. 5; 51-4, p. 29; & 51-6, pp. 1–2). The Board and KCSR concluded that Mero was traveling 22 miles per hour at the time of the accident, traveled 33 miles per hour in a restricted speed zone, could not stop within half the range of his vision, and caused over $235,000 in damage. Record Documents 51-5, p. 26; 51-6, p. 1–2, 7; 51-7. Therefore, the Board's factual findings supported a conclusion that this was a decertifying event. As such, Mero's dismissal was reasonable based solely upon this incident.

---

[2] KCSR found, and the Board concurred, that Mero's train hit a stationary train at 22 miles per hour and caused the rear locomotive of the stationary train to accelerate to 11 miles per hour, which caused the lead engine that was 5,000 feet away to lurch forward 18 feet with two workers on board. Record Document 78-1, p. 8 (citing Record Documents 51-4, pp. 16, 43, 55; 51-5, p. 29). KCSR's argument to the Board, which the Board accepted, was that the damages from the collision and derailment were in excess of $235,000. Record Document 51-4, p. 29.

[3] Exceeding the restricted speed coupled with causing an accident where the damages exceed the statutory value listed in 49 C.F.R. § 225.19(c)—$10,500 in 2015—is a decertifying event by itself. Record Document 78-1, p. 5 (citing Record Documents 51-4, pp. 5–7; 51-5, p. 2.).

Now, Mero tries to dispute this point by arguing that he was traveling 19 miles per hour and was compelled to agree that the train was traveling above 20 miles per hour. Record Document 81, p. 6. However, Mero provides no support for this assertion. Regardless, the Court is not in position to reconsider the fact finding of the Board. The Board determined that Mero violated GCOR 6.27 because he was traveling at 22 miles per hour and was not prepared to stop. Record Document 51-7. This conclusion was well supported by evidence in the record. Further, the Court is not in a position to reverse the factual findings of the Board even if the Court disagrees with the factual findings. *See Diamond*, 421 F.2d at 233 (finding test is not if reviewing court agrees with arbitrator's decision); *Misco*, 484 U.S. at 39 (finding that even silly fact finding is not grounds for reversing an arbitrator's decision). As such, Mero has put forth no valid argument in explaining how the Board's factual findings are irrational. Thus, finding that Mero's termination can be rationally explained, the Court holds that the Board acted within its jurisdiction.

    **C.**    **Whether the Board Violated the Railway Labor Act**

Mero does not particularly allege what part of the RLA the Board violated. *See* Record Document 56. Regardless, the Court concludes that Mero cannot establish that the panel violated the RLA. Courts rarely overturn a board's decision on this ground. *See Greene v. IPA/UPS Sys. Bd. of Adjustment*, 221 F. Supp. 3d 866, 879 (W.D. K.Y. 2016) ("A survey of the jurisprudence in this area reveals that courts rarely vacate RLA arbitrations on this ground."). "When they do, it is typically because the adjustment board in question failed to decide the merits of a case when the RLA required it to do so." *Id.* Here, the Board decided the merits of the case and issued a final decision in compliance with the RLA. *See* Record Document 51-7. The Board considered Mero's arguments and found that "substantial evidence" supported KCSR's decision to terminate Mero. *Id.* Therefore, the Board complied with its duties under the RLA.

Ultimately, Mero disapproves of the Board's decision and asks the Court to reconsider what the Board already decided: whether KCSR had good cause to terminate Mero. However, even mere disagreement with the Board's decision is not an invitation for a court to reconsider the merits of a labor dispute board's decision. *Diamond*, 421 F.2d at 233. Doing so would upset the "national policy favor[ing] the final settlement of labor disputes outside of the judicial process." *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 783 (5th Cir. 2012) (internal quotation marks and citations omitted). In this instance, the Court refuses to upset this national policy by reconsidering a final decision by a labor dispute board because the Board performed all of its duties under the RLA. As such, Mero has not asserted an appropriate basis for reversing the Board's decision.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [Record Document 78] is hereby **GRANTED**. Mero's claims against KCSR are hereby **DISMISSED WITH PREJUDICE**.

A judgment consistent with the instant Memorandum Ruling shall be issued herewith.

**THUS DONE AND SIGNED** this 6th day of November, 2020.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE